UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES D. HENDERSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>Defendant. | Case No. SA CV 14-870-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On June 20, 2014, plaintiff Charles D. Henderson filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB"). Plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision: whether the administrative law judge ("ALJ") properly considered plaintiff's credibility. Plaintiff's Memorandum in Support of Complaint ("P. Mem.") at 2-13; Memorandum in Support of Defendant's Answer ("D. Mem.") at 3-10.

Having carefully studied the parties' moving papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ failed to provide clear and convincing reasons for discounting plaintiff's subjective complaints related to his right hand and right knee, and to his bipolar disorder. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was fifty-eight years old on his alleged onset of disability date, has an eleventh grade education. AR at 35, 151, 186, 191. Plaintiff has past relevant work as a buyer, an account representative, and a warehouse general manager. *Id.* at 26, 53, 201.

On August 16, 2011, plaintiff protectively filed an application for a period of disability and DIB due to knee problems including cartilage gone and bone to bone contact, and carpal tunnel syndrome. *Id.* at 151, 190. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 84-88, 91-95, 97.

On January 24, 2013, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 33-48, 58-60. The ALJ also heard testimony from a medical expert (*id.* at 48-52), and a vocational expert. *Id.* at 52-58. On February 14, 2013, the ALJ denied plaintiff's claim for benefits. *Id.* at 17-

27. Plaintiff filed a timely request for review of the decision, which the Appeals Council denied. *Id.* at 4-6.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since October 27, 2009, the alleged onset of disability date. *Id.* at 19.

At step two, the ALJ found that plaintiff suffered from the severe impairments of osteoarthritis and allied disorders; degenerative joint disease right knee; and osteoarthritis of right thumb. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined that he had the RFC to perform less than the full range of medium work, with the limitations that plaintiff could: sit for six hours in an eight-hour workday; stand or walk for six hours in an eight-hour workday; lift or carry 50 pounds occasionally and 25 pounds frequently; and occasionally climb stairs, bend, stoop, kneel, crouch, and crawl. *Id.* at 20. In addition, the ALJ precluded plaintiff from: climbing ladders, ropes, or scaffolds; frequent balancing; and concentrated exposure to unprotected heights and dangerous or fast moving machinery. *Id.*

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

The ALJ found, at step four, that plaintiff was able to perform his past relevant work as a buyer and as an account representative. *Id.* at 26.

Consequently, without proceeding to step five, the ALJ concluded that, for the relevant period, plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 27.

The ALJ's decision stands as the final decision of the Commissioner.

### III.
### STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th

Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff argues the ALJ failed to meet his "burden of articulating clear and convincing reasons for rejecting [plaintiff's] testimony regarding his subjective symptoms." P. Mem. at 7. Specifically, plaintiff contends that "the ALJ did not properly conduct the mandated second step of the two-step analysis." *Id.* at 5; *see* Social Security Ruling ("SSR") 96-7p.[2]

Plaintiff alleges he is in constant pain due to problems with his knees, carpal tunnel in his wrist, and arthritis in his right thumb. AR at 20, 37-48, 213-17, 221. Plaintiff testified at the hearing that his carpal tunnel makes it impossible for him to hold objects for extended periods, open a jar, or write with his right hand. *Id.* at 25, 43. Plaintiff stated he was experiencing sleeplessness, "fatigue, low energy, stuff like that" in response to his diabetes and diabetes treatments. *Id.* at 45. Plaintiff claims he has difficulty dressing, bathing, showering, walking without a cane, and sitting due to his intense knee pain. *Id.* at 20, 37-48, 213-17, 221. Because of his constant pain and lack of sleep, plaintiff stated he spends six or seven hours of the day laying down on his couch and his very recently diagnosed kidney failure was causing him to urinate every couple of hours. *Id.* at 38, 45-46.

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

Plaintiff also claims to be suffering from short-term memory loss and an inability to concentrate because of his bipolar disorder. *Id.* at 46-47.

The ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[3] *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

An ALJ must do more than "simply recit[e] the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 2015 WL 4620123, at *1 (9th Cir. Aug. 4, 2015). To permit a meaningful review of the ALJ's credibility determination, the ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment;

---

[3] Defendant argues the ALJ was only required to provide specific reasons supported by substantial evidence, rather than clear and convincing reasons, as the clear and convincing standard is contrary to 42 U.S.C. § 405(g) and SSR 96-7p. D. Mem. at 3-4 n.5. But as defendant acknowledges, the Ninth Circuit has explicitly rejected that argument. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). Accordingly, this court applies the clear and convincing standard.

6

and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

Here, at the first step, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 20. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. Defendant argues the ALJ properly discounted plaintiff's credibility because: (1) "the objective clinical and laboratory findings failed to support the degree of limitations and dysfunction Plaintiff alleged" (D. Mem. at 4); (2) "the consultative orthopedic examiner, the medical expert who testified at hearing, as well as the State agency medical consultants all concluded Plaintiff was not as limited as he alleged" (*id.* at 6); (3) "[plaintiff] continued to work for years with both diabetes and knee problems, including intermittently for a time after his alleged disability onset date" (*id.* at 7-8); (4) "while Plaintiff testified at the administrative hearing that he was bipolar, the record shows no psychiatric treatment and that Plaintiff refused a psychiatric referral" (*id.* at 8); and (5) "despite Plaintiff's claims of debilitating impairment, he continued to engage in a relatively normal level of daily activity." *Id.* at 9; *see* AR at 24-26.

**A.   The Objective Clinical and Laboratory Findings Do Not Support All of Plaintiff's Subjective Complaints**

Defendant argues the first ground provided by the ALJ for finding plaintiff less credible is the lack of objective medical evidence to substantiate plaintiff's claims and the inconsistencies between the available objective evidence and those claims. D. Mem. at 4-5; *Id.* at 20-24. An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but it may be one factor used to evaluate

credibility. *Bunnell*, 947 F.2d at 345; *see also Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

    Plaintiff claims the ALJ's "unelaborated recitation of the data in the record can [not] meet *Bunnell's* requirement that the ALJ provide specific findings" before rejecting plaintiff's testimony. P. Mem. at 6; *see Brown-Hunter*, 2015 WL 4620123. The ALJ specifically noted plaintiff's claims related to his inability to work "due to problems with his knees, carpel tunnel and diabetes" and plaintiff's testimony stating, "he continued to have pain in his right knee despite surgery, he had kidney problems and was bipolar." AR at 20; *see Brown-Hunter*, 2015 WL 4620123, at *1 (requiring the ALJ to specifically point out the testimony under scrutiny). The ALJ then conducted a lengthy review of the medical evidence in the record. *Id.* at 20-24. The ALJ concluded, "[i]n summary there is a lack of objective clinical and laboratory findings, which would reasonably be productive of the degree of limitation dysfunction as alleged by [plaintiff]." *Id.* at 24.

### 1. **Knee Pain**

    The ALJ specifically noted the limited number of times plaintiff sought treatment for his right knee pain between plaintiff's initial complaints of discomfort in 2007 (AR at 266) and 2011 when plaintiff was diagnosed with degenerative osteoarthritis of the right knee and degenerative tears of the medial meniscus (*id.* at 399). *Id.* at 24. As the ALJ recounted, the record contains substantial information related to plaintiff's right knee stability, normal range of motion, full extension, lack of inflamation or redness, and well-placed prosthesis with no loosening after plaintiff's 2012 knee replacement surgery. *Id.* at 20-24; *see id.* at 265, 309, 312-16, 307, 328-29, 386, 394-97, 399-400. By November of 2012, plaintiff's treating physician "reassured [plaintiff]" and informed him "[n]o further orthopaedic intervention [was] deemed necessary." *Id.* at 394.

Despite the apparent success of the surgery, plaintiff still reported knee pain. *Id.* And indeed, a well-repaired and functioning knee is not necessarily a pain-free knee. Nonetheless, the objective medical evidence reasonably supports to at least some degree the ALJ's analysis regarding the lack of support for plaintiff's subjective complaints related to his knee pain. *Aukland*, 257 F.3d at 1018.

### 2. Diabetes and Kidney Problems

The record evidences plaintiff's diagnosis with diabetes mellitus, hyperglycemia, hypertension, and hyperlipidemia, but there is a lack of evidence related to plaintiff's alleged associated kidney problems diagnosed only a few weeks before the hearing. AR at 21, 38; *see id.* at 390 (reporting plaintiff had no history of kidney disease as of February 2012). The ALJ noted that as of September 2011 plaintiff "indicated he was doing okay on insulin, there was no hypoglycemia, and he reported he felt better with glucose coming down." AR at 21; *see id.* at 421; *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."). The ALJ's conclusion that the medical evidence fails to support plaintiff's subjective complaints related to his diabetes and kidney problems is reasonably reflected by the record. *Aukland*, 257 F.3d at 1018.

### 3. Bipolar Disorder

Plaintiff was diagnosed with bipolar disorder. AR at 21, 289, 421. The record reflects that the disorder was being treated only with medical marijuana and plaintiff refused psychiatric referral. *Id.* The extent to which plaintiff's failure to seek treatment for a mental disorder adversely reflects on his credibility is discussed below. But it is at least fair to say that, because plaintiff refused psychiatric treatment, there is scant evidence in the record to support his claim of

1  problems due to bipolar disorder.  This may suggest, however, that further
2  development of the record is needed.
3        This court cannot substitute its judgment and must defer to the ALJ's
4  findings.  *Aukland*, 257 F.3d at 1018.  The record reasonably supports the ALJ's
5  conclusions that the objective medical evidence fails to substantiate plaintiff's
6  subjective complaints regarding his knees, diabetes, kidneys, and bipolar disorder.
7  *Id.*  But as stated above, a lack of objective medical evidence, on its own, is an
8  insufficient basis for discounting plaintiff's credibility.  *Bunnell*, 947 F.2d at 345.
9  **B.**      **<u>The Lack of Physical Limitations Associated with Plaintiff's Claimed</u>**
10         **<u>Wrist Pain on State Ordered Assessments Is Not a Clear and</u>**
11         **<u>Convincing Reason for Discrediting Plaintiff</u>**
12       Defendant argues the second ground provided by the ALJ for finding
13 plaintiff less credible is the lack of physical limitations recorded in the functional
14 assessments by State doctors.  D. Mem. at 6; AR at 23-24.  Although defendant
15 argues this rationale is applicable to the ALJ's discrediting of plaintiff's knee pain,
16 the ALJ does not make this specific assertion.  *Id.* at 6-7; *see Brown-Hunter*, 2015
17 WL 4620123, at *3 (rejecting the District Courts affirmation based on "pieced
18 together medical evidence identified by the ALJ that it found inconsistent with 'an
19 allegation of excess pain'"); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)
20 ("We review only the reasons provided by the ALJ in the disability determination
21 and may not affirm the ALJ on a ground upon which he did not rely." (citation
22 omitted)); *Burrell*, 775 F.3d at at 1139 (asserting the ALJ failed to provide clear
23 and convincing evidence for rejecting claimant's testimony because the ALJ never
24 linked the medical records to plaintiff's testimony).
25       The ALJ does say this in relation to plaintiff's claims related to carpel tunnel:
26       At the hearing, [plaintiff] complained of carpel tunnel of right hand.
27       He testified that he could not write a page or open jars.  He could only
28

>hold things for a short time.  He did not mention thumb impairment.
>In a consultative examination, he was assessed with basal joint
>osteoarthritis of the right thumb.  There were no functional limitation
>noted with regard to his thumb and he had full range of his wrist.

AR at 25; *see id.* at 319-23 (limiting plaintiff to six hours of sitting, standing, or walking, and assessing no other physical limitations); *id.* at 66, 77 (concurring with State examining consultant's physical limitation assessment of plaintiff).

The record reflects plaintiff's complaints about "thumb pain, with pain exacerbated by grasping, reaching and turning his hand." *Id.* at 23, 319.  Plaintiff was diagnosed with osteoarthritis of the right thumb. *Id.* at 23, 25, 49.  The consultative examining physician's analysis of plaintiff's functional capacity lends some support to the ALJ's assessment of plaintiff's credibility. *See id.* at 322-323 (assessing no limitations based on plaintiff's osteoarthritis of the right thumb); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (affirming ALJ's credibility assessment based, in part, on doctor's opinion related to plaintiff's functional capacity, but also relying on plaintiff's limited use of pain medication, and plaintiff's reported daily activities).

However, the medical expert at the administrative hearing, Dr. Morse, testified that he "believe[d] from [plaintiff's] consultation report that he has some osteoarthritis of his right thumb and that might be an on-going problem." AR at 49.  The consultative report mentions "[p]revious diagnostic tests [of plaintiff's thumb] include x-rays," but does not reference where these are located in the record or when any tests were conducted, rendering independent review of this medical evidence impossible. *Id.* at 319.  Dr. Morse's functional assessment does not address any "manipulative limitations from the right thumb because [he does not] have any specific exhibits that address that"; he did not opine as to whether a limitation is warranted. *Id.* at 50.

The ALJ cites plaintiff's failure to specifically mention his right thumb while testifying at the administrative hearing as additional evidence undermining plaintiff subjective complaints of severe wrist pain and an inability to use his right hand. *Id.* at 25.  But this oversight or misstatement by plaintiff is insufficient to bolster the ALJ's contentions.  Plaintiff is not a medical expert and his failure to name the specific source of his pain does not undermine the record or plaintiff's serious uncontested complaints.

Standing alone, a functional assessment completed by a State physician after a single consultation is not clear and convincing reason for rejecting plaintiff's testimony about the severity of his wrist and hand pain, particularly when there is additional evidence to support plaintiff's complaints.  Since no additional reasons are provided by the ALJ for discrediting plaintiff assertions specific related to his right hand, the ALJ's associated findings are not supported by substantial evidence in the record. *Aukland*, 257 F.3d at 1035; *Tonapetyan*, 242 F.3d at 1147.

C. **Successful Work Prior to his Disability and Failed Attempts to Work After Onset Do Not Support Discrediting Plaintiff**

In discounting plaintiff's credibility, the ALJ also pointed to plaintiff's ability to work in spite of his alleged disabling impairments.  AR at 24-25.  An ALJ is required to consider a work history when assessing credibility. *See* 20 C.F.R. § 404.1529(c)(3).  Plaintiff continued to work until his alleged onset date of October 27, 2009, despite his complaints of knee pain, which is documented beginning in 2007, and his diagnosis of diabetes, which was possibly as early as 1996.  AR at 36, 156-71, 174-75, 191, 281.

A plaintiff is not disabled if he can engage in substantial gainful activity. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  But plaintiff's gainful employment *prior* to the onset of his disability is not a clear and convincing reason to discount plaintiff's credibility regarding his limitations *after* onset of his disability. *See Schall v. Apfel*, 134 F.3d 496, 502 (2nd Cir. 1998) (emphasizing

that "a consideration of work history must be undertaken with great care" because the same work history is subject to multiple interpretations). Plaintiff's assertion that his fairly "consistent and continuous employment for 32 years" is necessarily probative of his credibility is equally unconvincing. P. Mem. at 10 (citing to *Schall*, 134 F.3d at 502); *see Smith v. Colvin*, 2013 WL 1156497, at *7 (E.D. Cal. Mar. 19, 2013) ("[*Schall*] is unpersuasive . . . no cases suggesting an ALJ is bound to make a certain credibility determination based on a lengthy or 'good' work history.").

The ALJ noted that plaintiff worked "intermittently in 2010," after his disability onset date. AR at 24. The record reflects plaintiff's 2010 earnings of $2008.62. *Id.* at 157-58, 168. Plaintiff testified that he worked installing mini-blinds for two weeks in June 2010 and as a buyer for light bulbs for six days in September 2010. *Id.* at 36. But plaintiff testified he was "let go" from these positions "[b]ecause of the pain" he was experiencing, his inability to sit for long periods, and his need to move about. *Id.* at 48.

Plaintiff's three-week attempt at work so soon after the onset of his disability is not a clear and convincing reason for discounting plaintiff's credibility. *See Lingenfelter*, 504 F.3d at 1037-38 (the fact that a claimant tried to work and failed because of his impairments is not a clear and convincing reason to discount his credibility); *Micci v. Colvin*, 2015 WL 1239502, at *9 (C.D. Cal. Mar. 17, 2015) (plaintiff's ability to work three hours a day three to five days a week in home health care is insufficient to discount his complaints because it was not inconsistent with his complaints).

D.  **Plaintiff's Failure to Seek or Follow Treatment Is a Clear and Convincing Reason for Discrediting Only Some of Plaintiff's Claims**

Defendant argues the fourth ground provided by the ALJ for finding plaintiff's testimony less than credible is the lack of treatment sought by plaintiff. D. Mem. at 8. The ALJ noted several times that plaintiff declined a psychiatric

1  referral after being diagnosed with bipolar disorder. AR at 21, 25. The ALJ
2  specifically stated:
3      At the hearing [plaintiff] testified that he was bipolar but was not
4        being treated for it presently. There is no record of any psychiatric
5        treatment, in fact, [he] refused psychiatric referral from his doctor.
6  Id. at 25; *see* AR at 46-47. The record also reflects plaintiff's refusal of
7  psychiatric referral and that he was treating his bipolar disorder with medical
8  marijuana. *Id.* at 289-91, 421. Failure to seek treatment may be a basis for an
9  adverse credibility finding. *Orn*, 495 F.3d at 638. But when it comes to mental, as
10 opposed to physical, illnesses, "it is a questionable practice to chastise one with a
11 mental impairment for the exercise of poor judgment in seeking rehabilitation."
12 *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (internal quotation marks
13 and citation omitted). Thus, the ALJ's explanation for his credibility
14 determination regarding plaintiff's complaints related to his bipolar disorder was
15 not entirely clear and convincing.
16       The ALJ also specifically noted that although plaintiff was diagnosed with
17 diabetes mellitus in February 2007, "[he] did not begin to focus on his diabetic
18 treatment until in June 2011." AR at 21, 25. The record reflects plaintiff's past
19 refusal of insulin treatments. *Id.* at 21, 276; *see Tommasetti*, 533 F.3d at 1039;
20 *Bunnell*, 947 F.2d at 346 (citing *Fair*, 885 F.2d at 603 ("Another relevant factor
21 may be 'unexplained, or inadequately explained, failure to seek treatment or
22 follow a prescribed course of treatment.'")). Plaintiff's failure to seek or follow
23 suggested treatment for his diabetes, combined with the lack of objective medical
24 evidence supporting plaintiff's claims related to his diabetes, provide clear and
25 convincing reasons for the ALJ to discredit this portion of plaintiff's testimony.

E. **<u>Plaintiff's Daily Activities, Including His Attempt to Mow His Lawn as a Means of Physical Therapy, Were Not Inconsistent with His Alleged Symptoms</u>**

The final ground provided by the ALJ for discrediting plaintiff was plaintiff's continued participation in a relatively "normal level of daily" activity. AR at 25. Plaintiff admits to driving, doing "errands without assistance," and completing "light housekeeping chores." AR at 25; *see id.* at 217. The ALJ stressed that plaintiff "had been mowing his lawn," despite reporting "he needed a cane to walk, and that he could only walk, stand, and sit for short periods." *Id.* at 25-26; *see id.* at 386. But the ALJ failed to note why plaintiff claims to have been mowing his lawn.

Plaintiff testified, "[a]fter the surgery [he] was getting better, quit using the cane and the walker," but was he still experiencing pain so plaintiff returned to the doctor. *Id.* at 40. His regular treating physician wasn't available. *Id.* Another doctor took x-rays of plaintiff's knee and advised plaintiff to increase his physical activity and really "push it." *Id.*; *see id.* at 395 (documenting plaintiff's doctor's advice to "become more aggressive with his range of motion exercises"). The record also reflects plaintiff was "doing exercises on his own," because of his inability to pay for a professional physical therapist. AR at 397; *see id.* at 22; *Orn*, 495 F.3d at 638 (inability to pay for treatment cannot support an adverse credibility determination).

Additionally, as plaintiff argues, the ALJ failed to account for limited manner in which plaintiff can engage these daily activities. Plaintiff describes an ability to do some light daily activity, but also that he is in constant pain that gets worse if he tries to do yard work or anything else for more than 10-15 minutes. AR at 215-17; *see Gonzalez v. Sullivan*, 914 F.2d 1197, 1201-02 (9th Cir. 1990) (requiring an ALJ to show a plaintiff's daily activities translate into the ability to perform work); *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily

15

transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability." ).

While an ALJ may discredit a plaintiff based on his ability "to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," here, there is no evidence that plaintiff was spending a substantial part of his day engaging in his listed daily activities or that the physical demands of his daily activities were transferable. *See Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999); *see Fair*, 885 F.2d at 603 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits."). It appears that the ALJ discounted plaintiff's credibility simply because he was physically and mentally capable of performing some daily activities, which is an insufficient reason for discounting plaintiff's credibility.

In sum, the ALJ analyzed five factors when evaluating plaintiff's subjective complaints of pain: the lack of objective evidence, the lack of assessed physical limiting by the examining State physician, plaintiff's work history, plaintiff's failure to seek or following treatment plans, and plaintiff's daily activities. The ALJ provides clear and convincing reasons supported by substantial evidence to find plaintiff's subjective reports associated with his diabetes and kidney problems less than credible. But the ALJ failed to cite clear and convincing reasons supported by substantial evidence to undermine plaintiff's assertions related to his right hand and right knee, and his bipolar disorder. Nor do the ALJ's credibility findings with respect to plaintiff's claimed diabetes and kidney problems reflect on plaintiff's credibility generally. Nothing about the legitimate reasons provided

by the ALJ suggests plaintiff was deliberately lying or that he exaggerated his symptoms as a general matter. Accordingly, this court finds the ALJ erred in finding less than credible plaintiff's testimony associated with his right hand and right knee, and his bipolar disorder.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, the ALJ failed to provide clear and convincing reasons supported by evidence in the record for discrediting some of plaintiff's testimony. Remand is required to fully develop the record in these respects.

17

On remand, the ALJ shall reconsider the plaintiff testimony and the evidence concerning plaintiff's right hand and right knee, and concerning plaintiff's bipolar disorder, and either credit plaintiff's subjective reports as true or provide clear and convincing reasons for discrediting plaintiff. The ALJ shall also further develop the record as needed. The ALJ shall then assess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: September 30, 2015

SHERI PYM
United States Magistrate Judge